**SIGNED this 6th day of August, 2024**

*Nicholas W. Whittenburg*
**Nicholas W. Whittenburg**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
## WINCHESTER DIVISION

In re:

JERRY L. TEAL, SR.,

               Debtor.

No. 4:22-BK-12205 NWW
Chapter 11

### MEMORANDUM

In companion chapter 11 bankruptcy cases pending before this court, the debtors Teal Properties, Inc. and Jerry Lee Teal, Sr. (hereinafter collectively the "Debtors"), objected to the allowance of proofs of claim filed by Armor Concepts, LLC (hereinafter "Armor"). The court issued scheduling orders for those objections, and now as a result, cross-motions for summary judgment are before the court. The motions filed by Armor seek partial summary judgment, and the motions filed by the debtors seek full summary judgment.

Having considered the motions, briefs, statements of material and undisputed facts, and the

parties' responses to the foregoing, the court grants Armor's motions for partial summary judgment and denies the Debtors' motions for summary judgment.

The court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

## I. Background

On September 30, 2022, the Debtors filed voluntary petitions seeking relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. The court confirmed the Debtors' chapter 11 plans on June 7, 2023. According to those confirmed plans, all allowed claims—including any allowed claim of Armor—are to be paid in full using proceeds from the liquidation of property of the estate. That property has been sold, and the disbursing agent has released proceeds from the sale to pay all creditors in full save one—Armor. The disbursing agent now holds in escrow proceeds sufficient to fully satisfy Armor's claims, if allowed.

Armor filed proofs of claim in the Debtors' cases, each in the amount of $744,120.00. The basis of Armor's claims is the Debtors' purported "[i]nterference with [and] procurement of breach" of a sublease of commercial real estate by Armor to L&L Flooring Company (hereinafter "L&L"). The events leading to the present controversy may be easily summarized and are in most respects undisputed.

Teal Properties leased real property located in Nashville, Tennessee, to Armor through a lease agreement dated October 3, 2013 (hereinafter the "Master Lease"). The Master Lease carried an initial three-year term expiring on November 30, 2016. The lease also provided Armor with two options to extend the lease, each for a term of five years. To exercise the options, the Master Lease provided that "[n]otice to exercise any or each of the two (2) five-year options, must be given 12 months prior to the intended option date." On February 5, 2016, Armor sent Teal

Properties a written letter exercising the first option to renew the lease. It is undisputed that Armor's signed letter renewed the lease through November 30, 2021.

After Armor's exercise of the first option to renew the Master Lease, Armor and L&L desired to enter a sublease whereby L&L would sublet the property. However, the Master Lease conditioned any subletting on first securing the consent of Teal Properties.

On March 1, 2020, Armor and Teal Properties entered a written Consent to Sublease (hereinafter the "Consent"). Pursuant to the Consent, Teal Properties consented to the sublease of the premises between Armor and L&L. The consent states that a copy of the sublease was attached to the Consent and made a part thereof. The Consent required Armor to pay Teal Properties additional rent of $2,500.00 per month "for the life of this sublease agreement."

With the Consent in hand, Armor and L&L entered into a Lease Agreement dated March 5, 2020, whereby Armor sublet the property to L&L (hereinafter the "Sublease").[1] The Sublease between Armor and L&L carried a five-year term commencing March 1, 2020, and expiring February 28, 2025, with two (2) three-year options to extend. L&L took possession of the premises and paid rent to Armor pursuant to the Sublease. Armor, in turn, began paying the additional $2,500.00 per month rent to Teal Properties pursuant to the Consent. All appears to have worked well until the fourth quarter of 2021.

Despite consenting to Armor subletting the premises to L&L through February 2025, the Debtors maintain that Armor failed to exercise its second option to extend the Master Lease, and therefore, it expired on November 30, 2021. As the Sublease was subordinate to and subject to the expired Master Lease, the Debtors contend that L&L was no longer bound by the Sublease. The Debtors argue that they may not be held liable for inducing the breach of the non-binding Sublease.

---

[1] The Consent expressly referenced a sublease dated March 3, 2020. However, the Sublease between Armor and L&L is dated March 5, 2020. This discrepancy does not impact the resolution of the pending motions.

3

After the purported expiration of the Master Lease, the Debtors, or a successor owner of the premises, apparently entered a new lease with L&L and began collecting rent directly from L&L.

By contrast, Armor contends it provided timely oral notice to Teal Properties of exercising its second option to extend the term of the Master Lease through November 2026. Armor further maintains that the Consent executed by Teal Properties, and the Debtors' knowledge of the Sublease with an initial term well past the November 2021 Master Lease expiration date, operated as notice to Teal Properties of Armor's exercise of its second option.

The Debtors timely filed their objections to Armor's proofs of claim. In the objections the Debtors assert the claims should be disallowed because Armor did not file any supporting documents with their claims, as required by Federal Rule of Bankruptcy Procedure 3001(c). In support of this contention the Debtors argue that the filing of supporting documents was required because the Tennessee statute cited by Armor in its claims, Tenn. Code Ann. §47-5-109, relates to forged and fraudulent documents.[2] Further, the Debtors included a general denial, stating they had not "unlawfully interfered with or procured  breach."

With their motions for summary judgment the Debtors make two primary arguments. First, they argue that because the Master Lease, and with it, the Sublease, terminated in November 2021, the Debtors may not be held accountable for any purported breach of the Sublease by L&L after such date. Second, because Armor's claims are based on the Debtors' purported inducement of L&L's breach of the Sublease and because in its responses to the Debtors' discovery Armor has

---

[2] The cited statute concerns forged, or materially fraudulent written documents presented to the issuer of a letter of credit. It is undisputed that the statute has no application to the dispute at issue. It is clear from the record that the statute was cited in error and that Armor intended to cite Tenn. Code Ann. §47-50-109, the Tennessee statute affording a right to recover treble damages from a person who induces or procures a breach of contract. In its motion for partial summary judgment, Armor asks the court to find as a matter of law that its error may not serve as a basis to disallow Armor's claims. Because Armor's claims expressly state that they are predicated on a tortious interference with contract theory of recovery and because Armor cited the applicable Tennessee statute in other pleadings filed in the Debtors' bankruptcy cases prior, this typographical error was harmless. The court holds as a matter of law that this error does not provide a valid basis to disallow Armor's claims.

admitted that written documents exist to support its claims, the Debtors argue that Armor's claims are "based on a writing" as that phrase is used in Federal Rule of Bankruptcy Procedure 3001(c)(1). Because no written documents were attached to the proofs of claim, the Debtors request that the court preclude Armor from presenting the Sublease or any written documents into evidence in Mr. Teal's individual bankruptcy case pursuant to Federal Rule of Bankruptcy Procedure 3001(c)(2)(D).

In its motions for partial summary judgement, Armor seeks to forestall at least one of the arguments made by the Debtors in their motions. Armor contends that its claims are not "based on a writing," and therefore, it was not required to attach any documents to its proofs of claim. Armor seeks a partial summary judgement finding that its claims are not "based on a writing," and even if its claims are "based on a writing," its failure to attach any documents to its claims does not preclude it from presenting documentary evidence and does not warrant the disallowance of Armor's claims.

To resolve the pending motions, the court need only answer the following questions:

1. Whether the Master Lease expire on November 30, 2021, such that the Debtors are entitled to summary judgment as a matter of law?

2. Whether Armor's claim for tortious interference with the written Sublease is "based on a writing" as that phrase is used in Federal Rule of Bankruptcy Procedure 3001(c)(1)?

## II. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c); *see also*

5

FED. R. BANKR. P. 7056. When deciding a motion for summary judgment, the court construes all reasonable inferences in favor of the nonmoving party. *Waeschle v. Dragovic*, 576 F.3d 539, 543 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the disputed issue need not be "resolved conclusively in favor of the party asserting its existence," rather, only sufficient evidence "to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. at 249.

### III. Legal Analysis

**A.  The Master Lease did not expire on November 30, 2021.**

Tennessee law recognizes both statutory and common law actions for unlawful inducement of breach of contract, the difference being in whether treble damages or punitive damages are assessed. *Polk & Sullivan, Inc. v. United Cities Gas Co.,* 783 S.W.2d 538, 542 (Tenn. 1989). To prevail on such a cause of action, the plaintiff must prove four elements: (1) the existence of a legal contract of which the wrongdoer is aware; (2) that the wrongdoer maliciously intended to induce the breach; (3) that the breach occurred as a proximate result of the wrongdoer's action(s); and (4) that the plaintiff was damaged. *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 822 (Tenn. 1994).

The Debtors request that the court find as a matter of law that the Debtors could not have induced a breach, maliciously or otherwise, because the Master Lease terminated in November 2021, thereby extinguishing the leasehold estate that is the subject of the Sublease.[3] Essentially,

---

[3] In their motions for summary judgment, the Debtors also contend that Armor has failed to proffer any evidence that the Debtors contacted L&L to induce it to breach the Sublease and, therefore, summary judgment in the Debtors' favor is warranted. However, the sworn declaration of Alan Young, Armor's chief executive officer, includes emails Armor secured through discovery between Jerry Teal and L&L and a detainer warrant filed by Jerry

the Debtors' argument is two-fold; first, because Armor did not provide a letter notifying Teal Properties of its intent to exercise the second option to renew the Master Lease in the same manner previously used to extend the lease, the lease terminated in November 2021; and second, the Consent to Sublease could not extend the term because it was at all times "subject to" the Master Lease.

Examining these arguments, the court need only examine the language of the Master Lease and the Consent. The goal of contractual interpretation is "to ascertain and give effect to the intent of the parties." *Allmand v. Pavletic,* 292 S.W.3d 618, 630 (Tenn. 2009). Where the contractual language is unambiguous, the literal meaning controls; however, if contractual provision are "susceptible to more than one reasonable interpretation," the provisions may be considered ambiguous. *Id*. Courts then must apply the rules of construction to determine the parties' intent, construing any ambiguities against the drafter. *Crye-Leike, Inc. v. Carver*, 415 S.W.3d 808, 816 (Tenn.Ct. App. 2011). Thereafter, if an ambiguity remains, the legal meaning of the contract becomes a question of fact.

In this case, the Master Lease unambiguously (if vaguely) sets out an initial three-year term, with two (2) five-year options for renewal. Paragraph 4 of the Master Lease requires twelve-months' notice of Armor's intent to exercise a renewal option but does not state how notice is to be given. The language does not require that the notice be given in writing, though Armor did provide a written notice of renewal when exercising its first option and extending the contract through November 30, 2021.

The parties entered the Consent on March 1, 2020, whereby Teal Properties expressly

---

Teal with the Nashville Metropolitan Sessions Court evidencing Mr. Teal's attempts to get L&L or its owner, Mathew McKinney, to breach the Sublease. Accordingly, triable issues of fact exist and summary judgement for the Debtors is unwarranted.

consented to Armor's subletting the premises for a term beyond November 30, 2021. Armor agreed to pay, and Teal Properties agreed to accept additional rents of "$2,500.00 per month for the life of this sublease agreement." Ignoring any additional written or oral communications between Armor and the Debtors, these provisions alone establish that Teal Properties was aware of Armor's intent to exercise the second option to extend the term of the Master Lease.

To counter, the Debtors rely on the clause in the Consent providing that "[t]he Sublease shall be subject and subordinate at all times to all of the covenants, agreements, terms, provisions, and conditions of the Master Lease and of this Consent." They point to another provision stating that nothing in the Sublease or the Consent "shall enlarge or increase [Teal Properties'] obligations or liability under the Master Lease or otherwise, and in the event of a default in the Master Lease which results in a termination of the Master Lease, the Sublease and [L&L's] rights in the Premises shall also be terminated." By referencing these provisions, the Debtors argue that Armor's subletting of the premises did not operate to extend the term of the Master Lease because neither the Consent nor the Sublease modified or amended the Master Lease and Teal Properties expressly preserved all its rights under the Master Lease.

The Debtors' reliance on these provisions is misplaced. Their arguments ignore the fact that to exercise the option the Master Lease simply required Armor to notify Teal Properties of its intent to do so and not Teal Properties' assent to the extension. By consenting to the Sublease with an initial five-year term expiring after November 30, 2021, and before November 30, 2026, (the expiration date of the Master Lease following Armor's exercise of its second option to extend the lease), Teal Properties was certainly on notice of Armor's intent to exercise its second renewal option. The exercise of the option did not enlarge or increase or otherwise alter Teal Properties' obligations under the Master Lease. The option to extend the term through November 30, 2021,

was already provided for in the Master Lease. Nor did the Consent relieve Armor of its rights or

obligations under the Master Lease, excepting that the Consent required Armor to pay additional

rent to Teal Properties, which Teal Properties received and accepted. Because the Debtors were

aware of Armor's intent to exercise the second option to extend the term of the Master Lease, the

Debtors' motions for summary judgement are denied.[4]

## B. Armor's claims are not "based on a writing" as that phrase is used in Federal Rule of Bankruptcy Procedure 3001(c)(1).

According to Rule 3001(a) of the Federal Rules of Bankruptcy Procedure, a proof of claim "is

simply 'a written statement setting forth a creditor's claim,' conforming substantially to the

appropriate Official Form." *In re Guidry*, 321 B.R. 712, 714 (Bankr. N.D. Ill. 2005). A proof of

claim filed under section 501 of the Bankruptcy Code is deemed allowed absent a valid objection.

11 U.S.C. § 502(a). Once an objection is filed, the bankruptcy court determines the amount of the

claim and whether the claim is allowed or disallowed. 11 U.S.C. § 502(b)(1). This is "a central

function of the bankruptcy court." *In re Samson,* 392 B.R. 724, 727 (Bankr. N.D. Ohio 2008)

(citing 28 U.S.C. § 157(b)(2)(B)).

When a claim is "based upon a writing," Federal Rule of Bankruptcy Procedure 3001(c)

mandates that the writing be filed with the proof of claim. Noncompliance with this rule, however,

does not result in disallowance of the claim. *See In re Gorman*, 495 B.R. 823, 837 (Bankr. E.D.

Tenn. 2013); *see also* 1 Lawrence R. Ahern, III & Nancy Fraas MacLean, *Bankruptcy Procedure

Manual* § 3001:7 (2023). The Bankruptcy Code sets forth various grounds for disallowance of a

---

[4] The fact that Teal Properties and Armor agreed that the Sublease was subordinate to the Master Lease and did not increase Teal Properties' obligations thereunder may impact the amount of damages, if any, that Armor may be entitled to recover. The initial term of the Sublease was scheduled to expire on February 28, 2025, prior to the November 30, 2026, extended term of the Master Lease. Assuming that all elements of a claim for tortious interference exist, it is unclear that Armor will be entitled to recover any damages for unpaid rent that would accrue after February 28, 2025. In fact, Teal Properties may be entitled to offset against any damages the rent that would have been payable by Armor under the Master Lease after February 28, 2025, through November 30, 2026.

claim, none of which involves failure to include supporting documents with a filed proof of claim. *Guidry*, at 714 (citing 11 U.S.C. § 502(b)). Therefore, to the extent the Debtors argue that Armor's proofs of claim should be disallowed solely because Armor failed to attach supporting documents, the objection is overruled.

Although failure to include supporting documents is not fatal to the claim, whether the noncompliant claim constitutes prima facie evidence of the claim's validity under Rule 3001(f) is an entirely different matter. *See Gorman*, at 832. Questions surrounding evidence, whether prima facie or not, should not be comingled with whether a claim is to be allowed or disallowed; but rather, evidence, "is a concern only at a hearing to resolve factual disputes." *In re Guidry*, 321 B.R. at 714. Where a proof of claim is filed in accordance with the bankruptcy rules, the claim is prima facie valid. *In re Harris*, 2022 WL 198852 (Bankr. N.D. Ohio 2022). In such a case, the burden then shifts to the objecting party to rebut any presumption of validity by bringing forth evidence to refute at least one element essential to the claim's sufficiency. *Id.* By contrast, if a court determines that a proof of claim fails to comply with Rule 3001(c)(1), the court may also find that the claim is "not entitled to any special evidentiary status" at trial. *In re Gorman* at 832.

Not all claims are based upon a writing. Although Rule 3001(c) does not define that term, "courts have observed that the rule only applies when a writing created the purported obligation and is not applicable merely because a document might play some role in establishing the claim." *In re Lampe*, 665 F.3d 506, 514 (3d. Cir. 2011) (citing *In Re Los Angeles Int'l Airport Hotel Assoc.*, 106 F.3d 1479, 1480 (9th Cir. 1997); *In re Fuller*, 204 B.R. 894, 898 (Bankr. W.D. Pa. 1997). A claim is not based on a writing if it is advanced "on what are essentially state law tort principles." *Id*.

In the case at bar, Armor filed their proofs of claim for tortious interference with and unlawful

procurement of breach of contract, for which a cause of action exists in Tennessee common and

statutory law. *Hauck Mfg. Co. v. Astec Industries, Inc.*, 376 F.Supp.2d 808, 832 (E.D. Tenn. 2005)

(citing *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.,* 13 S.W.3d 343, 359 (Tenn. Ct.

App. 1999). Armor's claims against the Debtors are not founded on obligations of the Debtors to

Armor created by or established by a written contract or other document. Armor's purported right

to recovery is not predicated on Teal Properties' breach of the Master Lease or the Debtors' breach

of the Sublease to which they were not parties. Armor may indeed support its claim for tortious

interference at trial with the introduction of written documents. Such documents will certainly

include the Sublease. Armor may seek to introduce other documentary proof such as email

exchanges by and between the Debtors and L&L. Such documentary evidence may support

Armor's claim that the Debtors tortiously interfered with L&L's obligations under the Sublease,

but the documents do not define the conduct proscribed by Tennessee statutory and common law.

In fact, at trial Armor may present testimony of oral communications tending to prove that the

Debtors tortiously interfered with L&L's performance of the Sublease.

   Armor's claims are simply not "based on a writing" as that phrase is used in Federal Rule of

Bankruptcy Procedure 3001(c), and therefore, Armor was under no obligation to attach any writing

to its proofs of claim to secure prima facie validity under Federal Rule of Bankruptcy Procedure

3001(f).[5] The court concludes as a matter of law that Armor's proofs of claim complied with Rule

---

[5] In the Debtors' motions for summary judgement, the Debtors maintain that Armor's claims are based on the Sublease, and because it was not attached to the proof of claim filed in Mr. Teal's individual bankruptcy, the court should preclude Armor from presenting the Sublease as evidence. However, in the response to Armor's motions for partial summary judgment, the Debtors maintain that Federal Rule of Bankruptcy Procedure 3001(c)(1) required that Armor attach not only the Sublease to its proofs of claim but any written document, including email communications, that may evidence that the Debtors tortiously interfered with L&L's performance under the Sublease. The Debtors construe the phrase "based on a writing" too broadly. If the Debtors' position is correct, filing a proof of claim would be unnecessarily burdensome, requiring a creditor to gather and attach all possible documents that it may wish to present as evidence in opposition to a yet unfiled objection to the claim. There is no similar requirement when filing a complaint. *See* Fed. R. Bankr. P. 7008. This is not what Federal Rule of Bankruptcy Procedure 3001(c)(1) prescribes.

3001 and, therefore, constituted prima facie evidence of the claim's validity under Rule 3001(f). However, the Court finds the bare-boned assertions in the claim have been rebutted by the equally bare-boned denial set forth by Debtors in their objections. Hence, the presumption of validity of Armor's claims has been defeated and Armor shall bear the burden of proof at trial. *See In re Walters*, 176 B.R. 835 (Bank. N.D. Ind. 1994).

### IV. Conclusion

For the foregoing reasons and by separate orders entered in the Debtors' respective bankruptcy cases, the court will grant Armor's motions for partial summary judgment and deny the Debtors' motions for summary judgment.

###